**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Steven Beers, individually and on behalf of all others similarly situated, | 7:21-cv-00002-CS |
| Plaintiff, | |
| - against - | First Amended Class Action Complaint |
| Mars Wrigley Confectionery US, LLC, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Mars Wrigley Confectionery US, LLC ("defendant") manufactures, labels, markets and sells ice cream bars covered in "Silky Smooth" "Milk Chocolate" under the Dove brand ("Product").

2.    The label shows chunks of chocolate with a bar being dipped in chocolate.



3.      The back label describes the Product as "Silky Smooth" three times, with more pictures of chocolate.



Silky Smooth Dove Bar

Dipped in silky smooth Dove Milk Chocolate. An experience like no other.

Dipped in silky smooth Dove Milk Chocolate.

## I.      DEFINITION OF CHOCOLATE

4.      Chocolate is defined by Merriam-Webster as a food "prepared from ground roasted cacao beans."[1]

5.      Dictionary.com defines chocolate as a "a preparation of the seeds of cacao, roasted, husked, and ground, often sweetened and flavored, as with vanilla."[2]

---

[1] Merriam-Webster, chocolate.
[2] Dictionary.com, chocolate.

2

6.    The Cambridge Dictionary describes chocolate as "a sweet, usually brown, food made from cacao seeds, that is usually sold in a block, or a small candy made from this."[3]

7.    Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines chocolate as "a food preparation in the form of a paste or solid block made from roasted and ground cacao seeds, typically sweetened."[4]

8.    To make chocolate, cacao beans are "Fermented, roasted, [and] shelled," producing cacao nibs.

9.    The nibs are ground to produce cocoa mass or chocolate liquor and then combined with dairy ingredients, sweeteners and flavorings.

10.    This state, and the Food and Drug Administration ("FDA"), adopted these dictionary definitions for chocolate – made from cacao beans with a small amount of optional ingredients, like dairy products, sweeteners and flavorings. See 21 C.F.R. § 163.13(a); 21 C.F.R. § 163.124(b).

11.    While a definition draws a sharp boundary around a term to provide meaning, words are also defined by what they exclude.[5]

12.    In the context of chocolate, the definitions universally exclude fats from sources other than cacao ingredients, *viz*, vegetable oils.[6]

13.    Federal and state regulations require that where a food has some chocolate but is supplemented by a non-de minimis amount of cacao substitutes, it should be disclosed on the front label as "milk chocolate and vegetable oil coating." 21 C.F.R. § 163.155(c).

---

[3] Cambridge.org, chocolate.
[4] Chocolate definition – Google search.
[5] Carnap and Bar-Hillel.
[6] Vegetable oils used with cacao ingredients are also referred to as vegetable fats because they are solid at room temperature.

## II.     CONSUMERS EXPECT CHOCOLATE TO BE MADE FROM CACAO BEANS

14.     Historians of chocolate note that "Mixing unnatural ingredients with chocolate – with the intent of extending the quantity of raw product and defrauding customers – has a long history."[7]

15.     The main adulterants and extenders were starches and vegetable fats.

16.     In 2007, a group of the largest confectionery companies sought to re-define chocolate by replacing cacao ingredients with "cocoa butter equivalents" ("CBE"), or vegetable fats.

17.     Over thirty-thousand Americans submitted critical comments, crashing the FDA's website.

18.     In an interview on National Public Radio ("NPR"), Cybele May, proprietor of a website devoted to reviews of candy, was asked, "if it's labeled chocolate, it has to have cocoa butter in it?"[8]

19.     May replied, "Absolutely, and it cannot contain other vegetable oils. It has to be completely from the cocoa bean."

20.     The Los Angeles Times reported on the attempted change to the meaning of chocolate.

21.     According to an average consumer who was interviewed, "The idea of substituting vegetable oil for cocoa butter, a natural component of the cocoa bean that is the traditional source of chocolate," "would [make her] feel like [she] was being duped."[9]

22.     One chocolatier commented, "This is all a question of money. If they can take something and dilute it, and still get the taste [for] a fraction of the cost, that's what they want. But the taste is not the same, he and others said."

---

[7] L.P. Brindle and B.F. Olsen, Adulteration – The Dark World of 'Dirty' Chocolate, in Chocolate (eds. L.E. Grivetti and H.Y. Shapiro) (2009).
[8] Rebecca Roberts, An Argument Against 'Healthy' Chocolate, Talk of the Nation, Apr. 24, 2007, NPR; candyblog.net.
[9] Jerry Hirsch, The Courage of their Confections, Apr. 14, 2007, Los Angeles Times.

23.    San Francisco-based Gary Guittard, "president of his eponymous, family-owned business [Guittard Chocolate Co.], [saw] this as a battle for the soul of the popular confection."

24.    Fran Bigelow, of Seattle's Fran's Chocolates, was asked if she would "ever use vegetable fats and oils instead of cocoa butter in [her] chocolate?," and responded, "No, no, no…we just are fighting to protect the integrity of chocolate," by "educat[ing] consumers."

25.    The proposal was defeated, in part due to chocolate colossus and industry leader, Mars Wrigley:

> At Mars, the consumer is our boss, and American consumers are passionate about chocolate. They don't want anyone to change the chocolate they've enjoyed for generations…As a privately held company, we have the freedom to invest in the highest quality chocolate and deliver what consumers want.

26.    The President of Mars promised that the "company would continue to use 100 percent cocoa butter for all its U.S. chocolate products -- which include M&M's and Dove bars -- even though it could save money using other ingredients."[10]

27.    Mars described their chocolate products as "pure, authentic chocolate and they're going to stay that way."

28.    Mars refused to "compromise the purity and authenticity of our chocolate by diluting it with a cocoa butter substitute. This company was built on quality – it's one of our core principles and we will not lower the bar on chocolate quality."

29.    Mars recognized that consumer sentiment is on the side of wanting chocolate from cacao ingredients.

30.    Mars' position was based, in part, on consumer surveys it conducted.

31.    Recent consumer surveys, including one of over four hundred Americans, reached the same conclusions.

---

[10] Reuters Staff, Mars pledges to use only 100 percent cocoa butter, Sept. 17, 2007.

32.    Roughly two-thirds of respondents who viewed the Product's front label – "Silky Smooth Milk Chocolate" and chunks of chocolate – expected it would contain chocolate from cacao bean ingredients and not chocolate substitutes.

## III.    REASONS WHY CONSUMERS WANT CHOCOLATE FROM CACAO BEANS

33.    There are several reasons why consumers are misled when "chocolate" is not made from cacao beans but with vegetable oils.

34.    First, cacao ingredients are several times more expensive than vegetable oils.

35.    Though cocoa butter makes up one-fourth of chocolate, it costs more than three times as much as vegetable oil.

36.    Bigelow stated, "there's no benefit to the consumer, but there's a benefit to the manufacturers that are using those vegetable oils or the lower-cost ingredients."

37.    Where a "chocolate" product is made with lower-cost ingredients, but advertising higher-value ingredients, consumers pay more and get less.

38.    Second, cacao ingredients provide greater satiety than vegetable oils – it fills you up instead of leaving the consumer feeling like they did not eat anything.

39.    By replacing cacao ingredients with vegetable oils, consumers must eat more of the "chocolate" to feel full.

40.    The result is greater consumption of empty calories.

41.    Third, the creamy and smooth taste of chocolate is eliminated when vegetable oils are added in place of the cocoa butter from chocolate from cacao beans.

42.    The substitution of vegetable oils – in amounts as low as five percent – contribute to a waxy and oily mouthfeel and leave an aftertaste.

43.    Cocoa butter, according to Jay King, the president of the Retail Confectioners

International, "is the essence of the taste, texture and 'mouth feel'" of chocolate.

44.    Though proponents of the plan to add vegetable oils to chocolate claimed consumers "won't notice if they change it," Jean Hammond of Kilwin's Ice Cream Shops, disagreed:

> Just that little bit of vegetable oil changes the mouthfeel. It makes it taste waxy. You would just be stunned at the difference in taste. They're just not comparable We take chocolate just very, very seriously. Chocolate-ish is not good enough.

45.    Fourth, real chocolate has health and nutrition benefits that vegetable oils lack.

46.    Numerous studies have indicated that flavonoids in cacao beans positively affect the heart and arteries against harmful free radicals.

47.    Vegetable oils raise cholesterol, contain artery-clogging trans-fats and saturated fats, and are linked to higher rates of heart disease.

48.    Cocoa butter contains relatively heart-healthy, unsaturated fats, which does not cause elevated cholesterol or greater risks of heart disease.

49.    Fifth, chocolate is a natural ingredient, made through fermentation, roasting and grinding of cacao beans, and mixing them with flavorings, dairy ingredients and sweeteners.

50.    Consumers across all demographics increasingly prefer foods that are natural, and avoid synthetic ingredients that are highly processed and made with additives.

51.    In contrast, the coconut and palm oils used by Defendant are synthetic, subjected to hydrogenation and interesterification, in the presence of chemical catalysts, such as nickel and cadmium.

## IV.    THE "SILKY SMOOTH" "MILK CHOCOLATE" CONTAINS VEGETABLE OILS

52.    The label's chunks of chocolate, the bar, and the words "Chocolate Almond Dipped," are false and misleading because the Product's coating is mostly vegetable oils.

53.    However, the front label representations are misleading and at best, a "half-truth,"

because the chocolate contains ingredients not found in real chocolate – "Coconut Oil."

**INGREDIENTS: ICE CREAM:** SKIM MILK, CREAM, SUGAR, CORN SYRUP, MONO AND DIGLYCERIDES, CARRAGEENAN, CAROB BEAN GUM, GUAR GUM, NATURAL FLAVOR, BETA CAROTENE. **COATING:** MILK CHOCOLATE (SUGAR, COCOA BUTTER, SKIM MILK, CHOCOLATE, LACTOSE, MILKFAT, SOY LECITHIN, ARTIFICIAL FLAVOR), SEMISWEET CHOCOLATE (SUGAR, CHOCOLATE, CHOCOLATE PROCESSED WITH ALKALI, COCOA BUTTER, MILKFAT, SOY LECITHIN, ARTIFICIAL AND NATURAL FLAVORS), COCONUT OIL, PALM OIL.  (U)D

**INGREDIENTS:**

**COATING:** MILK CHOCOLATE (SUGAR, COCOA BUTTER, SKIM MILK, CHOCOLATE, LACTOSE, MILKFAT, SOY LECITHIN, ARTIFICIAL FLAVOR), SEMISWEET CHOCOLATE (SUGAR, CHOCLATE, CHOCOLATE PROCESSED WITH ALKALI, COCOA BUTTER, MILKFAT, SOY LECITHIN, NATURAL AND ARTIFICIAL FLAVORS), COCONUT OIL, PALM OIL.

54.    The ingredient list reveals that what is described on the front label as "SILKY SMOOTH MILK CHOCOLATE" is actually "Coating."

55.    Though the "Coating" contains milk chocolate and semisweet chocolate, it includes coconut oil and palm oil.

56.    Based on industry specifications for "compound coatings" and/or evaluation of the saturated fat and cholesterol content listed on the Nutrition Facts, the amount of coconut oil and palm oil is estimated at approximately thirty percent.

57.    Listing the ingredient as "Coating" with its vegetable oil components fails to tell consumers that it contains an appreciable amount of these ingredients, in place of cacao ingredients.

58.    Consumers of a premium ice cream bar, under the Dove brand, will not be so distrustful to scrutinize the fine print of the ingredient list to confirm the front label is accurate.

59.     Guittard stated that nothing prevents a company from producing a bar with less or no cocoa butter, but it "has to be labeled 'chocolate flavored' (for it still has the cocoa in it) rather than 'chocolate.' That gives the consumer a signal that something less than chocolate lies beneath the wrapping."

60.     Consumers expect that companies – especially larger and respected businesses, like Mars – to tell them the truth, not half-truths.

61.     Even chocolate aficionados such as Cybele May indicated that expectations for chocolate are so well-established that she "do[es]n't want to have to flip over the chocolate bar to read the ingredients to know what I'm getting. I want to know on the front that it is chocolate with cocoa butter."

## V.    CONCLUSION

62.     Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of the Product, relative to itself and other comparable products or alternatives.

63.     The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

64.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

65.     Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

66.     The Product is sold for a price premium compared to other similar products, no less than $6.49 for pack of three, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

67.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

68.    Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

69.    Plaintiff Steven Beers is a citizen of New York.

70.    Defendant Mars Wrigley Confectionery US, LLC is a Delaware limited liability company with a principal place of business in Hackettstown, Warren County, New Jersey and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

71.    The parties are citizens of different states.

72.    Venue is in this district because a substantial part of the events or omissions giving rise to the claim occurred here, Plaintiff's purchase and awareness that the representations were misleading.

Parties

73.    Plaintiff Steven Beers is a citizen of Mahopac, Putnam County, New York.

74.    Defendant Mars Wrigley Confectionery US, LLC, is a Delaware limited liability company with a principal place of business in Hackettstown, New Jersey, Warren County.

75.    Defendant is one of the largest confectionary companies in the world.

76.    Defendant's portfolio of brands includes M&M's, Snickers, Dove chocolate and dozens of other household names across this country and the world.

77.    The Product is sold throughout New York in grocery stores, convenience stores, big box stores, gas station stores, warehouse stores, and are available online.

78.     Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from stores including 7-Eleven, 3650 Lee Blvd, Jefferson Valley, NY 10535, during summer 2020, among other times.

79.     Plaintiff saw the front label that said, "Silky Smooth Milk Chocolate" and chunks of chocolate.

80.     Plaintiff, like many consumers, knows that chocolate's taste is often described as "smooth."

81.     Plaintiff also knows that vegetable oil ingredients are waxy and oily, and lack the "smooth" mouthfeel of chocolate.

82.     Plaintiff knew that the Dove brand is one of the largest purveyors of chocolate in this country and expected that if they sold him a product represented as "Silky Smooth Milk Chocolate," it would not contain ingredients inconsistent with chocolate.

83.     Plaintiff wanted more than a "chocolatey" taste but chocolate – understood as being made from cacao ingredients without chocolate substitutes like vegetable fats.

84.     Plaintiff bought the Product at or exceeding the above-referenced price.

85.     Plaintiff relied on the representations identified here.

86.     Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

87.     Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

88.     The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

89.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

90.    The class will consist of New York residents who purchased the Product during the statutes of limitations for each cause of action alleged.

91.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

92.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

93.    Plaintiff is an adequate representative because his interests do not conflict with other members.

94.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

95.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

96.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

97.    Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

98.    Plaintiff incorporates by reference all preceding paragraphs.

99.    Plaintiff and class members desired to purchase a product which contained chocolate ingredients and not an appreciable amount of chocolate substitutes.

100.  Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

101.  Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

102.  Plaintiff relied on the representations.

103.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.

104.  The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained chocolate ingredients and not an appreciable amount of chocolate substitutes.

105.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

106.  This duty is based on Defendant's outsized role in the market for this type of Product.

107.  Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

108.  Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

109.  The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

110.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

111.  Defendant had a duty to truthfully represent the Product, which it breached.

112.  This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians of the Dove brand.

113.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, an iconic brand.

114.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

115.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

116.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they contained chocolate ingredients and not an appreciable amount of chocolate substitutes

117.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

118.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the

undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   June 28, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com