```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
STEVEN BEERS, individually and on behalf of all
others similarly situated,
```

                                        Plaintiff,              **OPINION & ORDER**

       - against -                                          No. 21-CV-2 (CS)

MARS WRIGLEY CONFECTIONERY US, LLC,

                                    Defendant.
-------------------------------------------------------------x

Appearances:

Spencer Sheehan
Sheehan & Associates, P.C.
Great Neck, New York
*Counsel for Plaintiff*

Omid G. Banuelos
David A. Forkner
John Turquet Bravard
Williams & Connolly LLP
Washington, D.C.
*Counsel for Defendant*

Seibel, J.

      Before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint. (ECF No. 20.) For the following reasons, the motion is GRANTED.

**I.    BACKGROUND**

      For purposes of this motion, the Court accepts as true the facts, but not the conclusions, alleged by Plaintiff in the Amended Complaint. (ECF No. 19 ("AC").)

      **A.    Facts**

      Defendant Mars Wrigley Confectionery US, LLC, manufactures, markets, labels, and sells chocolate-coated ice cream bars called Dove Bars ("the Product"). (AC ¶ 1.) Plaintiff

Steven Beers purchased the Product multiple times, including at a 7-Eleven convenience store in Jefferson Valley, New York during the summer of 2020. (*Id.* ¶ 78.) The Product sells for approximately $6.49 for a three-pack, excluding tax. (*Id.* ¶ 66.) The front label of the Product reads "Silky Smooth Dove Bar®, Vanilla Ice Cream with Milk Chocolate" and includes a picture of chunks of chocolate. (*Id.* ¶ 2.) A picture of the Product's front label, which was included in the Amended Complaint, is below.



(*Id.*) The back label of the Product likewise says "Silky Smooth Dove Bar®" and has a picture of chunks of chocolate, and also includes the text: "Take a moment . . . to enjoy the rich flavor of

2

vanilla ice cream dipped in silky smooth DOVE® Milk Chocolate." (*Id.* ¶ 3.)[1]  A picture of the relevant portion of the back label, which was included in the Amended Complaint, is below.



(*Id.*)

The product labeling also includes an ingredient list, which separately lists the ingredients in the ice cream and the coating of the Product. (*Id.* ¶ 53.)  The listed ingredients for

---

[1] Plaintiff also points to separate text on the back label that says "Vanilla and chocolate chip ice cream dipped in silky smooth DOVE® Milk Chocolate," but it appears from the label that this text is advertising a different product – Dove Bar Minis – that is not the subject of this lawsuit. (AC ¶ 3.)

the coating are: "MILK CHOCOLATE (SUGAR, COCOA BUTTER, SKIM MILK, CHOCOLATE, LACTOSE, MILKFAT, SOY LECITHIN, ARTIFICIAL FLAVOR), SEMISWEET CHOCOLATE (SUGAR, CHOCLATE, CHOCOLATE PROCESSED WITH ALKALI, COCOA BUTTER, MILKFAT, SOY LECITHIN, NATURAL AND ARTIFICIAL FLAVORS), COCONUT OIL, PALM OIL." (*Id.*)

Plaintiff contends that the Product's front label is misleading because it refers to "silky smooth milk chocolate" without revealing that the "the chocolate contains ingredients" – coconut oil and palm oil – "not found in real chocolate." (*Id.* ¶ 53; *see id.* ¶¶ 54, 79.) He alleges that having seen that front label, he was deceived into believing that the Product contained only milk chocolate made from cacao beans and did not contain any "ingredients inconsistent with chocolate" such as vegetable oils. (*Id.* ¶¶ 79-83.) Plaintiff relies in part on a consumer survey to support his contentions, alleging that "[r]oughly two-thirds of respondents who viewed the Product's front label – 'Silky Smooth Milk Chocolate' and chunks of chocolate – expected it would contain chocolate from cacao bean ingredients and not chocolate substitutes." (*Id.* ¶¶ 31-32.) According to Plaintiff, consumers are misled when "'chocolate' is not made from cacao beans but with vegetable oils" because ingredients derived from cacao beans, as compared to vegetable oils, are more expensive, provide "greater satiety," have a smoother and creamier taste, have health and nutrition benefits, and are natural and less processed. (*Id.* ¶¶ 33-51.)

Plaintiff asserts that had he known the Product contained vegetable oils, he would not have purchased it, (*id.* ¶ 86), and that it was worth less than what he paid, (*id.* ¶ 88).

B.     **Procedural History**

Plaintiff filed the original complaint in this action on January 1, 2021. (ECF No. 1.) On May 24, 2021, the Court granted Defendant's request for a pre-motion conference in

4

contemplation of a motion to dismiss. (ECF No. 10.) On the same date, Defendant filed an answer to the complaint. (ECF No. 9.)[2] At the pre-motion conference on June 21, 2021, the Court granted Plaintiff leave to amend the complaint. (*See* Minute Entry dated June 21, 2021.) Plaintiff's counsel stated that, in light of the discussion at the conference, the Amended Complaint would not include certain claims that were in the initial complaint, including claims for negligent misrepresentation and injunctive relief. (*Id.*) Plaintiff's counsel also stated he would not be able to marshal additional facts to support the fraud claim. (*Id.*)

Plaintiff filed the Amended Complaint on June 28, 2021. (AC.) The Amended Complaint seeks damages and injunctive relief for: (1) violations of Sections 349 and 350 of the New York General Business Law ("GBL"), which prohibit deceptive business practices and false advertising; (2) breaches of express warranty and the implied warranty of merchantability, and violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (3) negligent misrepresentation; (4) fraud; and (5) unjust enrichment. (AC ¶¶ 118-151.) Plaintiff seeks to represent a class of all persons residing in New York who have purchased the Product. (*Id.* ¶¶ 90-97.)

Defendant filed the instant motion to dismiss the Amended Complaint on July 28, 2021. (ECF No. 20.) In its memorandum of law, it noted that the Amended Complaint included claims that Plaintiff's counsel indicated he would remove at the pre-motion conference, and also included new claims for breach of express and implied warranty and the Magnuson Moss Warranty Act. (ECF No. 21 ("D's Mem.") at 1 n.2.) In response, Plaintiff stated in his memorandum of law that he withdraws his claims for negligent misrepresentation, fraud,

---

[2] Defendant explained in its pre-motion letter that it would answer the complaint in addition to moving to dismiss, in order to prevent Plaintiff from dismissing the case under Federal Rule of Procedure 41(a) and refiling it in another jurisdiction. (*See* ECF No. 8.)

injunctive relief, and breach of express and implied warranty and the Magnuson Moss Warranty Act. (ECF No. 22 ("P's Opp.") at 1.) Accordingly, only Plaintiff's GBL and unjust enrichment claims remain.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. New York General Business Law Claims

Plaintiff's primary cause of action arises under GBL §§ 349 and 350.  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce," and Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §§ 349, 350.  To state a claim under either section, Plaintiff must show "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *6 (S.D.N.Y. Oct. 26, 2016) (cleaned up); *see Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ("To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.") (cleaned up).

"Plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (cleaned up).  Instead, a plaintiff must "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* (cleaned up).  "Although the question of whether a business practice or advertisement is misleading to a reasonable consumer is generally a question of fact, it is 'well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer.'" *Wynn v. Topco*

7

*Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

Plaintiff's primary contention in support of his GBL claims is that "the 'Milk Chocolate' representations communicate the false message that the Product does not contain lower quality chocolate substitutes." (P's Opp. at 12.) This argument fails because Plaintiff concedes that the predominant ingredient in the Product's coating is milk chocolate made with cocoa butter (as opposed to substitutes) and because no reasonable consumer would understand the representations on the front label to communicate that the product contained only milk chocolate. As explained below, Plaintiff's arguments to the contrary conflate the content of the coating (made of milk chocolate and other ingredients) with the content of the milk chocolate ingredient thereof.

Plaintiff has failed to allege that the mere presence of vegetable oils in the coating means that a "lower quality chocolate substitute" was used instead of milk chocolate. In fact, Plaintiff concedes that the Product's coating does contain milk chocolate (made with cocoa butter), in addition to other ingredients. (AC ¶ 55.) The ingredient list confirms that the coating component of the product is made from (in descending order of predominance): (1) milk chocolate (made from sugar, cocoa butter, skim milk, chocolate, lactose, milkfat, soy lecithin, and artificial flavor); (2) semisweet chocolate (made from sugar, chocolate, chocolate processed with alkali, cocoa butter, milkfat, soy lecithin, and natural and artificial flavors); (3) coconut oil; and (4) palm oil. (AC ¶ 53.) The ingredient list does not reflect that coconut oil and palm oil were used *in lieu* of cocoa butter in making the milk chocolate; rather, the label makes clear that the milk chocolate (made as Plaintiff would like, with cocoa butter) is combined with other elements to create the product's coating.

Moreover, Plaintiff has not plausibly alleged that the mere presence of the words "with milk chocolate" and "silky smooth" on the label suggests to the reasonable consumer that the product is made only or exclusively with milk chocolate. *See Harris v. Mondelẽz Glob. LLC*, No. 19-CV-2249, 2020 WL 4336390, at *3 (E.D.N.Y. July 28, 2020) ("Reasonable consumers would not expect . . . that the [cocoa in Oreos] is present in a particular form or not mixed with other ingredients."); *Kamara v. Pepperidge Farm, Inc.*, No. 20-CV-9012, 2021 WL 5234882, at *5 (S.D.N.Y. Nov. 9, 2021) ("The Complaint does not plausibly allege why a reasonable consumer . . . would believe that the use of butter precluded secondary usage of other fats or oils, either as an additional shortener or for external application to enhance the crackers' appearance."). That is particularly true where, as here, the Product in question is an ice cream bar coated in chocolate. Assessing nearly identical allegations made with regard to a similar product (Costco's Kirkland Signature brand "Chocolate Almond Dipped Vanilla Ice Cream Bars"), the court in *Puri v. Costco Wholesale Corp.* observed that "a reasonable consumer would know that chocolate must be mixed with some significant amount of fat or oil to create a coating that would solidify around an ice cream bar." No. 21-CV-1202, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021).[3]

Where a product highlights an ingredient on the front label, other courts have pointed to the lack of modifiers, such as "only" or "exclusively," in assessing the reasonableness of claimed consumer confusion. In *Harris v. Mondelez Global LLC*, the plaintiff alleged that an Oreo cookie label was deceptive because it described the product as "Always Made With Real Cocoa"

---

[3] *Puri* was brought by the same Plaintiff's counsel, which likely explains why the Amended Complaint in this case includes the otherwise inexplicable allegation that "[t]he label's chunks of chocolate, the bar, and the words 'Chocolate Almond Dipped,' are false and misleading because the Product's coating is mostly vegetable oils." (AC ¶ 52.)

9

despite the fact that the cocoa was refined through an alkalizing process. The court dismissed the claims, explaining:

> It is not misleading for Defendant to represent that its Oreos are made with "real" cocoa when they in fact contain cocoa. . . . Plaintiffs' claims are trained on whether the product contains cocoa that is real, and the Oreos indisputably do contain cocoa, along with other ingredients. There is no "only" or "exclusively" modifier before the phrase "real cocoa." In that context, reasonable consumers would not expect, upon learning that the Oreos contain cocoa, that the cocoa is present in a particular form or not mixed with other ingredients.

*See Harris*, 2020 WL 4336390, at *3 (cleaned up). The claim here is arguably even weaker: Plaintiff cannot plausibly claim that the milk chocolate in the Product is not "real" milk chocolate; instead, he essentially claims that the presence of other ingredients in the coating alongside milk chocolate somehow so contaminates the pure product that highlighting milk chocolate is misleading. But as in *Harris*, the Product's label does not lead the consumer to conclude anything about the particular form of milk chocolate or the absence of other ingredients. *See id.*

Nevertheless, Plaintiff argues that "consumers are led to believe that this Product is of greater quality than it is," based on the presence of vegetable oil. (P's Opp. at 14.) But he fails to convincingly explain how this label suggests that the Product contains more milk chocolate than it actually does. While it is "materially misleading to suggest a product contains a greater proportion of a preferred ingredient than it actually does," *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 462 (S.D.N.Y. 2020), this label makes no such suggestion. The label simply says, "with milk chocolate" indicating (accurately) that that ingredient is prominently featured in the Product. It is nothing more than a conclusory leap to allege that a reasonable consumer reads those statements to implicitly mean that the product necessarily contains no vegetable oils. Even if a reasonable consumer would interpret a label on a chocolate bar that said "100% pure milk chocolate" (or words to the effect) as a representation about the absence of vegetable oils, it does

10

not follow that a reasonable consumer would draw the same conclusion about an ice cream bar advertised to be made "with milk chocolate."

Plaintiff argues that *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), precludes reliance on the ingredient list to correct a misleading representation on the front label, but that argument misses the mark as there is no misrepresentation to correct. The representation that the Product is a chocolate-covered ice cream bar "with milk chocolate" is confirmed, not contradicted by the ingredient list. *See Wallace v. Wise Foods, Inc.*, No. 20-CV-6831, 2021 WL 3163599, at *2 (S.D.N.Y. July 26, 2021) ("The ingredients label, which is consistent with . . . representations on the front of its packaging, explains that the chips contain cheddar cheese and sour cream while informing that they contain lesser amounts of artificial flavoring. . . . [Plaintiff] has no argument that the ingredients label 'contradicts, rather than confirms, representations on the front of the box.'") (cleaned up) (quoting *Mantikas*, 910 F.3d at 637). As this Court has previously explained, in a case involving the same Plaintiff's counsel, the argument that "the Ingredient List on the back of the Product is insufficient to correct or clarify the misleading statement on the front of the product" is simply inapplicable where "the Product's front label is not misleading." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 164 (S.D.N.Y. 2021). In other words, "there is no deception to be cured – [Defendant] makes no representations, implied or otherwise, that would deceive a reasonable consumer into believing that no vegetable oils are present in the Product's coating." *See Puri*, 2021 WL 6000078, at *7; *see also Kamara*, 2021 WL 5234882, at *5 ("[T]he packaging accurately indicated that the

11

product contained butter, and the ingredients list confirmed that butter predominated over other oils and fats.").[4]

*Mantikas* is also distinguishable where – as here – text on the front label refers to or emphasizes a product's predominant ingredient, even if other ingredients are present. *See Kamara*, 2021 WL 5234882, at *5 (*Mantikas* distinguishable where "the packaging accurately indicated that the product contained butter, and the ingredient list confirmed that butter predominated over other oils and fats"); *Sarr*, 2020 WL 729883, at *4 (*Mantikas* distinguishable where "the Mashed Potatoes' predominant fat ingredient is the one emphasized in the defendant's labeling – butter," despite the presence of vegetable oil); *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-CV-2250, 2019 WL 3409883, at *4 (E.D.N.Y. July 26, 2019) ("This case is distinguishable [from *Mantikas*] because Plaintiff does not allege that Defendant's mashed potatoes contained more margarine than butter."); *see also Harris*, 2020 WL 4336390, at *3 ("Courts following *Mantikas* have reaffirmed that a representation that a food is 'made with' a 'real' ingredient does not necessarily mislead from the truth that the advertised ingredient may have been combined with another."). Even a case cited by Plaintiff, *Campbell v. Whole Foods Mkt. Grp., Inc.*, recognizes this distinction: in *Campbell*, the court found the labeling of "Honey Graham Crackers" misleading in part because honey was not the primary or predominant sweetening agent. 516 F. Supp. 3d 370, 388 (S.D.N.Y. 2021). The court acknowledged the distinction between that product and the product in *Sarr*, where the label "was not misleading"

---

[4] *Colpitts v. Blue Diamond Growers*, cited by Plaintiff, is distinguishable for the same reason. There, the court held that consumers could be misled into believing that almonds were actually smoked over fire where the product was prominently labeled "Smokehouse," and that the ingredient list including "natural hickory smoke flavor" did not suffice to render the front label not misleading. *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 583 (S.D.N.Y. 2021). That case has no application where there is no "misleading label on the front" to be "cure[d]" by an ingredient list. *Id.*

because "the featured ingredient in *Sarr* – butter – was the product's predominant source of fat." *Id.* For the same reason, this case – where milk chocolate is in fact the leading ingredient in the coating – is distinguishable from *Campbell* and *Mantikas*.[5]

In an attempt to demonstrate consumer expectations, Plaintiff points to a "recent consumer survey," in which he alleges "[r]oughly two-thirds of respondents who viewed the Product's front label – 'Silky Smooth Milk Chocolate' and chunks of chocolate – expected it would contain chocolate from cacao bean ingredients and not chocolate substitutes." (AC ¶ 32.) There are two problems with this allegation. First, absent any context regarding what questions were asked or what methodology was employed, these "barebones allegations" are insufficient "to nudge [Plaintiff's] claims of consumer deception from possible to plausible." *Puri*, 2021 WL 6000078, at *7 (addressing nearly identical allegations involving survey results).[6]

Second, aside from the lack of context, the Product *does* contain chocolate from cacao bean ingredients. It contains milk chocolate, and that milk chocolate is not made with chocolate

---

[5] Plaintiff also cites *Watson v. Kellogg Sales Co.*, No. 19-CV-1356, 2019 WL 10734829, at *1 (S.D.N.Y. Oct. 29, 2019), a case which he represents "rel[ies] on *Mantikas* that naming a product 'Grahams' could mislead consumers." (P's Opp. at 12-13.) But the published opinion is a short bench ruling that does not include any substantive discussion of *Mantikas*. *See Watson*, 2019 WL 10734829, at *1. The court also refers the parties to a prior opinion, *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185 (S.D.N.Y. July 20, 2016), but *Mahoney* predates *Mantikas*, and the only discussion of the GBL analyzes whether the conduct in question was "consumer oriented" – an issue not in dispute here. *Id.* at *9. In short, absent more context, it is unclear how *Watson* helps Plaintiff.

[6] While "[t]he role of the court at this stage of the proceedings is not in any way to evaluate the truth as to what really happened, but merely to determine whether the Plaintiff's factual allegations are sufficient to allow the case to proceed," *Doe v. Colum. Univ.*, 831 F.3d 46, 59 (2d Cir. 2016), absent any allegations demonstrating how this survey was conducted or what questions were asked, the Court need not accept Plaintiff's conclusion that the survey is reflective or demonstrative of what reasonable consumers believe, *see Twohig*, 519 F. Supp. 3d at 163. More information about the framing of the questions or the answer choices provided is necessary for a survey to contribute to the plausibility of a claim. *See id.* at 163-64.

13

substitutes.  (AC ¶ 53.)  That the chocolate is mixed with vegetable oil to make the coating does not make it any less chocolate.  Plaintiff does not represent that the consumers in the survey would expect the Product to contain no vegetable oil, or to contain no other ingredients apart from chocolate made from cacao bean ingredients.  *See Puri*, 2021 WL 6000078, at *7 (disregarding survey result that failed to support plaintiff's primary assertion); *cf. Twohig*, 519 F. Supp. 3d at 163 ("[T]he survey does not demonstrate that over 43% of the respondents believed the flavor in Defendant's product came *predominantly or exclusively* from vanilla beans – which is what Plaintiffs allege.") (emphasis in original).  Accordingly, even accepting that the survey results are reflective of what reasonable consumers understand about chocolate, (P's Opp. at 15), that understanding is not inconsistent with the reality of the Product, and consumers who reasonably hold that belief are not in fact misled.

Plaintiff also includes a series of allegations about general consumer preferences for chocolate made from cacao beans over chocolate made with vegetable oils, based on health benefits, cost, taste, "mouthfeel," and texture.  (AC ¶¶ 33-51.)  The Amended Complaint in *Puri* includes a nearly identical set of allegations.  (*Compare id.*, *with* Amended Complaint ¶¶ 21-38, *Puri v. Costco Wholesale Corp.*, No. 21-CV-1202, ECF No. 18 (E.D. Cal. May 17, 2021).)  Addressing the argument that the packaging in that case was deceptive because "'real' chocolate is a natural ingredient that has health and nutrition benefits and satiety value that synthetic vegetable oils do not," the *Puri* court explained that "it is simply not plausible that a reasonable consumer would purchase and eat chocolate covered ice cream bars for health or nutritive benefits or satiety value."  *Puri*, 2021 WL 6000078, at *7.  And "[e]ven if it were, the Product's packaging makes no claims about health, nutrition, or satiety."  *Id.*  The same is true here.

14

Moreover, specific to this case, many of Plaintiff's allegations are simply inapplicable because they speak to products where cacao bean ingredients are *replaced* with vegetable oils. (*See* AC ¶ 33 ("[C]onsumers are misled when 'chocolate' is not made from cacao beans but with vegetable oils."); *see also id.* ¶¶ 39, 41.)  Again, Plaintiff has not plausibly alleged that vegetable oils have been used in the Product to "replace" cacao butter:  nowhere is it plausibly alleged that the milk chocolate ingredient in the Product's coating contains any fat substitute, or that the coating would contain more cocoa butter but for the added vegetable oils.  For this reason, Plaintiff's complaint that consumers are not getting what they pay for is also unsupported.

With regard to taste and texture, there is no allegation that the Product actually has a waxy or otherwise unpleasant taste or feel.  All that Plaintiff alleges is that vegetable oils *can* change the taste and that Plaintiff "wanted more than a 'chocolatey' taste but [rather wanted] chocolate – understood as being made from cacao ingredients without chocolate substitutes like vegetable fats." (*Id.* ¶ 83; see *id.* ¶¶ 41-44.)  The chocolate in the Product meets that description, and nowhere does Plaintiff allege that the use of vegetable oils in the coating along with the chocolate changed the Product's taste, gave it a waxy or oily texture, or otherwise caused it to disappoint.[7]

Accordingly, Plaintiff's claims under §§ 349 and 350 of the GBL are dismissed.[8]

---

[7] To the extent Plaintiff contends that Defendant's labeling violates regulations of the Food and Drug Administration, that argument fails for the reasons stated in *Twohig*. *See* 519 F. Supp. 3d at 165 n.7.

[8] Because Plaintiff's GBL claims are dismissed, the Court need not and does not address Defendant's argument that these claims are expressly preempted by the Food, Drug, and Cosmetic Act. *See, e.g.*, *Wallace*, 2021 WL 3163599, at *3 n.3.

### B. Unjust Enrichment Claim

To state a claim for unjust enrichment under New York law, a Plaintiff must show that "(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015). "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney*, 2016 WL 3951185, at *11 (cleaned up).

Courts will routinely dismiss an unjust enrichment claim that "simply duplicates, or replaces, a conventional contract or tort claim." *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (cleaned up). "Indeed, courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims." *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (collecting cases).

Here, Plaintiff has failed to explain how the unjust enrichment claim is "not merely duplicative of [the] other causes of action." *Twohig*, 519 F. Supp. 3d at 168 (cleaned up) (collecting cases). Therefore, Plaintiff's unjust enrichment claim is dismissed.

### C. Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v.*

*City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the benefit of a pre-motion letter from Defendant stating the grounds on which it would move to dismiss, (ECF No. 8), as well as the Court's observations during the pre-motion conference, (*see* Minute Entry dated June 21, 2021). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Further, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. *See TechnoMarine*

*SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 35), and close the case.

**SO ORDERED.**

Dated: February 17, 2022
       White Plains, New York

                                        _____
                                        CATHY SEIBEL, U.S.D.J.